# Attachment 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| R.J. REYNOLDS TOBACCO COMPANY; et al.;      *Plaintiffs*, <br><br> v. <br><br> UNITED STATES FOOD AND DRUG ADMINISTRATION; et al.;      *Defendants*. | CIVIL ACTION NO. 6:20-cv-00176 |

## DECLARATION OF NOORALAM ERKIN

I, Nooralam Erkin, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the President of Neocom, Inc. ("Neocom"). Neocom is incorporated in Texas and has its headquarters in Tyler, Texas. Neocom's office is located at 2206 Old Henderson Highway, Tyler, Texas 75702.

2. Neocom operates three convenience stores in Tyler: (1) Speedy Express, 1938 Troup Highway, Tyler, Texas 75701; (2) Super Food Mart #2, 1212 E NE Loop 323, Tyler, Texas 75708; and (3) Super Food Mart #9, 858 S SE Loop 323, Tyler, Texas 75702.

3. In my current position, which I have held since 2003, I have numerous responsibilities, including determining which products Neocom's stores will sell and advertise.

4. Neocom's stores sell cigarettes and display cigarette packages and cigarette advertising. This product category is important to our stores financially. Cigarettes are the stores' main commodity after gasoline. A large proportion of cigarette purchasers also purchase other goods at the same time

they buy cigarettes.  It is not feasible to simply stop selling cigarettes because of the importance of cigarette sales to the overall profitability of Neocom stores.

5.      Neocom will be harmed in numerous ways as a result of the new graphic-warning requirements imposed by the Food and Drug Administration ("FDA") in its Final Rule implementing the Family Smoking Prevention and Tobacco Control Act, Pub. Law No. 111-31, 123 Stat. 1776 (2009) (the "Act").  *See* Tobacco Products: Required Warnings for Cigarette Packages and Advertisements, 85 Fed. Reg. 15,638 (Mar. 18, 2020) (to be codified at 21 C.F.R. pt. 1141) ("the Rule").

6.      The Rule requires that tobacco product manufacturers place grotesque and visually dominant images on their cigarette packages and cigarette point-of-sale advertising.  These graphics appear intended to cause negative emotions rather than merely provide factual information.  Neocom does not want to display these graphic warnings, which are designed to frighten, shock, and disgust its customers and employees.  That is not how we treat or interact with our customers or employees and, thus, the Rule injures the fundamental character of our business.

7.      Neocom is also harmed because the government is co-opting Neocom's valuable retail space for its chosen anti-smoking advocacy.  There is no way for Neocom to mitigate this harm since the Rule applies to retail point-of-sale advertising which could be seen by anyone who enters our stores.  Moreover, as a practical matter, the Rule will have the effect of creating a large mosaic anti-smoking billboard in each Neocom store given the manner in which cigarettes are displayed on merchandising racks, which show the top 50% of the packs.  To be clear, I do not object to the government advocating against smoking in other ways (*e.g.*, paying for anti-smoking public service announcements with the excise taxes it collects on cigarette sales), but I should not be forced to be its "mouthpiece" to do so.

8. Currently, the sale of cigarettes and non-tobacco purchases made in connection with cigarette sales accounts for a large percentage of the sales made in our stores. In my judgment based on numerous years of experience in the retail sector, if the warning regime is allowed to proceed and we choose to continue to sell products as currently displayed, Neocom would lose business. In particular, Neocom's non-smoker customers will be more likely to shop for non-tobacco goods at retailers that do not sell tobacco products in order to avoid being subjected to the government's disturbing images: autopsied lungs, bloody urine specimens, large tumors, etc. Food retailers who do not have to subject customers to such images will have a clear and substantial competitive advantage. In addition, customers who continue to shop at the stores will be less likely to purchase certain non-cigarette items, such as food items that are displayed at the counter within view of the graphic cigarette packages and advertising.

9. As explained above, it is not feasible for Neocom to stop selling cigarettes because doing so would likely lead to an approximately 30% reduction in sales, which would threaten the viability of the business. Customers who currently buy cigarettes at Neocom stores would be likely to take their business to other retailers where tobacco products are available (and would make their non-tobacco purchases there as well). Accordingly, the Rule will cause Neocom's stores to lose business and cause Neocom to suffer financial harm.

10. Neocom could choose to minimize somewhat the impact of the graphic warning rule by altering the manner in which cigarette packs and cartons are displayed to customers. To do that, however, we would have to undertake the cost of reorienting the shelving such that what smokers and non-smokers see when coming to the cash-register are the tops of the packs which indicate the brand but do not display the warning.

Executed on May 13, 2020                                         Nooralam Erkin