# Attachment 6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| R.J. REYNOLDS TOBACCO COMPANY; et al.;<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES FOOD AND DRUG ADMINISTRATION; et al.;<br><br>*Defendants*. | CIVIL ACTION NO. 6:20-cv-00176 |

## DECLARATION OF SULEMAN ISMAIL

I, Suleman Ismail, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the President of Rangila Enterprises Inc. ("Rangila Enterprises"), Rangila LLC ("Rangila"), Sahil Ismail, Inc., and Is Like You Inc. (collectively, the "Companies").

2. Rangila Enterprises is incorporated in Texas and has its headquarters in Fort Worth, Texas. Its office is located at 1930 Roberts Cut Off Road, Fort Worth, TX 76114. Rangila Enterprises operates five convenience stores in Fort Worth: (1) Quik Sak #1, 898 S Cherry Lane, Fort Worth, TX 76108; (2) Quik Sak #10, 769 N Las Vegas Trail, Fort Worth, TX 76108; (3) Quik Sak, 3617 Shawnee Trail, Fort Worth, TX 76135; (4) Quik Sak, 8801 Clifford Street, Fort Worth, TX 76108; and (5) Quik Sak #9, 8717 White Settlement Road, Fort Worth, TX 76108.

3. Rangila is a Texas limited liability company and has its headquarters in Fort Worth, Texas. Its office is located at 1930 Roberts Cut Off Road, Fort Worth, TX 76114. Ranglia operates three convenience stores in Texas: (1) Quick Save, 1930 Roberts Cut Off Road, Fort Worth, TX

76114; (2) Penny Saver, 780 W Hurst Boulevard, Hurst, TX 76053; and (3) Cowboy Quick Stop, 220 E Moore Avenue, Terrell, TX 75160.

4. Sahil Ismail, Inc. is incorporated in Texas and has its headquarters in Grapevine, Texas. Its office is located at 1111 S Ball Street, Grapevine, TX 76051. Sahil Ismail, Inc. operates one convenience store at that location.

5. Is Like You Inc. is incorporated in Texas and has its headquarters in Fort Worth, Texas. Is Like You Inc.'s office is located at 7601 Jacksboro Highway, Fort Worth, TX 76135. Is Like You Inc. operates one convenience store at that location.

6. In my current position, I have numerous responsibilities, including determining which products the Companies' stores will sell and advertise.

7. The Companies' stores sell cigarettes and display cigarette packages and cigarette advertising. This product category is important to our stores financially. Cigarettes are a main source of revenue for the stores. A large proportion of cigarette purchasers also purchase other goods at the same time they buy cigarettes. It is not feasible to simply stop selling cigarettes because of the importance of cigarette sales to the overall profitability of the Companies' stores.

8. The Companies will be harmed in numerous ways as a result of the new graphic-warning requirements imposed by the Food and Drug Administration ("FDA") in its Final Rule implementing the Family Smoking Prevention and Tobacco Control Act, Pub. Law No. 111-31, 123 Stat. 1776 (2009) (the "Act"). *See* Tobacco Products: Required Warnings for Cigarette Packages and Advertisements, 85 Fed. Reg. 15,638 (Mar. 18, 2020) (to be codified at 21 C.F.R. pt. 1141) ("the Rule").

9. The Rule requires that tobacco product manufacturers place disturbing and visually dominant images on their cigarette packages and cigarette point-of-sale advertising. These graphics appear intended to cause negative emotions rather than merely provide factual information. The Companies do not want to display these graphic warnings, which are designed to frighten, shock, and

disgust their customers and employees. That is not how the Companies treat or interact with our customers or employees and, thus, the Rule injures the fundamental character of our businesses.

10. In addition, the Companies are harmed because the government is commandeering their stores' valuable retail space for its own anti-smoking advocacy. There is no way for the Companies to avoid this harm since the Rule applies to retail point-of-sale advertising, which could be seen by anyone who enters our stores. Moreover, as a practical matter, the Rule will have the effect of creating a large mosaic anti-smoking billboard in each of our stores given the manner in which cigarettes are displayed on merchandising racks, which show the top 50% of the packs. To be clear, I do not object to the government advocating against smoking in other ways (*e.g.*, paying for anti-smoking public service announcements with the excise taxes it collects on cigarette sales), but I should not be forced to be its "mouthpiece" to do so.

11. Currently, the sale of cigarettes and non-tobacco purchases made in connection with cigarette sales accounts for approximately a third of the sales made in the Companies' stores. In my judgment based on numerous years of experience in the retail sector, if the warnings go into effect and we choose to continue to sell products as currently displayed, the Companies would lose business. The Companies' non-smoker customers will be more likely to shop for non-tobacco goods at retailers that do not sell tobacco products in order to avoid being subjected to the government's disturbing images: autopsied lungs, feet with amputated toes, large tumors, etc. Food retailers who do not have to subject customers to such images will have a clear and substantial competitive advantage. In addition, customers who continue to shop at the stores will be less likely to purchase certain non-cigarette items, such as food items that are displayed at the counter within view of the graphic cigarette packages and advertising.

12. As explained above, it is not feasible for the Companies to stop selling cigarettes because doing so would likely lead to an approximately one-third reduction in sales, which would

3

threaten the viability of the business. Customers who currently buy cigarettes at our stores would be likely to take their business to other retailers where tobacco products are available (and would make their non-tobacco purchases there as well). The Rule will therefore cause our stores to lose business and cause the Companies to suffer financial harm.

13. The Companies could choose to minimize somewhat the impact of the graphic warning rule by altering the manner in which cigarette packs and cartons are displayed to customers, but doing so would require an outlay of financial resources.

Executed on May 13, 2020

_____
Suleman Ismail