**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| |
|---|
| R.J. REYNOLDS TOBACCO COMPANY, *et al.*, <br><br>      *Plaintiffs*, <br><br>      v. <br><br> UNITED STATES FOOD AND DRUG ADMINISTRATION, *et al.*, <br><br>      *Defendants.* |

Civil Action No. 6:20-cv-00176


**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

LEGAL STANDARD ................................................................................................................ 3

ARGUMENT ............................................................................................................................. 4

      I.      PLAINTIFF NEOCOM SHOULD BE DISMISSED FOR LACK
             OF STANDING. ............................................................................................ 4

             A.      Neocom's Allegations of Injury ............................................................ 4

             B.      Neocom Fails to Demonstrate any First Amendment Injury. ........... 6

             C.      Neocom Fails to Demonstrate any Financial Injury ........................... 8

      II.     UPON NEOCOM'S DISMISSAL, THIS CASE SHOULD BE
             DISMISSED FOR LACK OF VENUE. ...................................................... 12

      III.    IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED
             TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF
             COLUMBIA. ............................................................................................... 13

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Am. Meat Inst. v. USDA*,
   760 F.3d 18 (D.C. Cir. 2014) ........................................................................14

*Blacklands R.R. v. Ne. Texas Rural Rail Transp. Dist.*,
   No. 1:19-cv-250, 2019 WL 3613071 (E.D. Tex. Aug. 5, 2019) ......................3

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973) ........................................................................................7

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980) ........................................................................................8

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) ...............................................................................3, 11

*Ctr. for Biological Diversity v. EPA*,
   937 F.3d 533 (5th Cir. 2019) ........................................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ......................................................................................10

*Dearth v. Gonzales*,
   No. 2:06-cv-1012, 2007 WL 1100426 (S.D. Ohio Apr. 10, 2007)................14

*EnviroGLAS Prod., Inc. v. EnviroGLAS Prod., LLC*,
   705 F. Supp. 2d 560 (N.D. Tex. 2010) ...........................................................3

*Inst. of Certified Practitioners, Inc. v. Bentsen*,
   874 F. Supp. 1370 (N.D. Ga. 1994) ..............................................................12

*Little v. KPMG LLP*,
   575 F.3d 533 (5th Cir. 2009) ........................................................................11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................3, 10

*Markle Interests, LLC v. United States Fish & Wildlife Serv.*,
   827 F.3d 452 (5th Cir. 2016) ..........................................................................6

*Martin v. PepsiAmericas, Inc.*,
   628 F.3d 738 (5th Cir. 2010) ..........................................................................3

*McCormick v. Payne*,
   No. 3:15-cv-02729-M, 2015 WL 7424772 (N.D. Tex. Nov. 23, 2015) .........13

*Miller v. Albright*,
    523 U.S. 420 (1998) ..................................................................................................................12

*Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011) ....................................................................................................7

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
    32 F.3d 690 (2nd Cir. 1994) ...................................................................................................11

*R.J. Reynolds Tobacco Co. v. FDA*,
    696 F.3d 1205 (D.C. Cir. 2012) .............................................................................................14

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
    467 U.S. 947 (1984) ..................................................................................................................7

*SEIU, Local 5 v. City of Houston*,
    595 F.3d 588 (5th Cir. 2010) .................................................................................................7, 8

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ....................................................................................................................3

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) ................................................................................................................12

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ..................................................................................................................3

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
    471 U.S. 626 (1985) ..................................................................................................................8

*Zimmerman v. City of Austin*,
    881 F.3d 378 (5th Cir. 2018) ..................................................................................................11

**Statutes**

15 U.S.C. § 1333 .............................................................................................................. 2, 6, 8

28 U.S.C. § 1391 ..........................................................................................................1, 4, 12, 13

28 U.S.C. § 1406 ................................................................................................................*passim*

Family Smoking Prevention and Tobacco Control Act, Pub. L. No. 111-31, 123 Stat. 1776 (2009) ...2

**Rules**

Fed. R. Civ. P. 12(b)(3)................................................................................. 1, 3, 14

Fed. R. Civ. P. 12(h)(3)......................................................................................12

Fed. R. Civ. P. 41(b) ..........................................................................................13

Fed. R. Evid. 702 ...............................................................................................10

**Regulations**

21 C.F.R. pt. 1141 ................................................................................................2

85 Fed. Reg. 15,638 (Mar. 18, 2020) ............................................................ 2, 6, 8

**Other Authorities**

14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure .......................................13

## INTRODUCTION

This litigation is primarily a dispute between some of the largest cigarette manufacturers in the world—all based in North Carolina—and federal agencies in Washington, D.C. and Maryland.  It concerns a Food and Drug Administration (FDA) rule that requires cigarette manufacturers to place new health warnings on cigarette packages and advertisements.  So what connects this case to the Eastern District of Texas?  Even in Plaintiffs' telling, but the thinnest of reeds: of the nine plaintiffs, one of them—Neocom, Inc.—operates three convenience stores in Tyler: one Speedy Express, and two Super Food Marts.  Each sells cigarettes.  Because one of the nine plaintiffs "resides" in this district, 28 U.S.C. § 1391(e)(1)(C), Plaintiffs claim that venue is appropriate.  Compl., ECF No. 1, ¶ 24.

That might have been right, except for one foundational oversight: Neocom lacks Article III standing.  As a cigarette *retailer*, which sells cigarettes as packaged by the manufacturer, Neocom is neither compelled to say anything, nor prohibited from speaking any message that it wishes.  So, unlike the manufacturer Plaintiffs, Neocom cannot rely on any alleged First Amendment injury to establish standing.  Neocom's standing allegations thus focus largely on alleged *financial* harm.  But those allegations rely on speculative hypotheticals about the Rule's potential future impact on sales of *non-cigarette* items at its three convenience stores.  And under Article III, such speculative theories of injury cannot support the exercise of federal jurisdiction.  Tellingly, Plaintiffs do *not* advance what might seem to be a more obvious theory of financial injury: that cigarette sales will fall once the FDA's new warning requirements take effect.  Presumably, that was a strategic litigation judgment, made because an allegation that the Rule would actually affect smoking rates—and thus, cigarette profits— would undermine their desired narrative on the merits: that the Rule "will achieve nothing[.]"  Pls.' Mot. for Summ. J., ECF No. 34 (Pls.' Br.), at 3.

Whatever the reason for Plaintiffs' pleading decisions, the result is clear: Neocom lacks standing, and it must be dismissed from the litigation.  The same is likely true for the other retailer Plaintiffs, although the Court need not decide that—because without Neocom, there is no basis for venue in this district.  Accordingly, the case should be dismissed for lack of venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).  In the alternative, the case should be transferred

to the U.S. District Court for the District of Columbia, where it "could have been brought," 28 U.S.C. § 1406(a), and where nearly identical litigation is pending.

## BACKGROUND[1]

On March 18, 2020, FDA issued a Final Rule requiring the use of eleven new textual warnings, accompanied by eleven color graphics, on cigarette packages and advertisements. *See Tobacco Products; Required Warnings for Cigarette Packages and Advertisements*, 85 Fed. Reg. 15,638 (Mar. 18, 2020) (to be codified at 21 C.F.R. pt. 1141) ("the Rule").  The Rule was promulgated pursuant to the Tobacco Control Act's mandate that FDA require new warnings "depicting the negative health consequences of smoking."  Family Smoking Prevention and Tobacco Control Act, Pub. L. No. 111-31, § 201(a), 123 Stat. 1776, 1845 (2009) (codified at 15 U.S.C. § 1333(d)).  The statute and the Rule generally prohibit the manufacture, sale, or advertising of cigarettes without the required warnings, *see* 15 U.S.C. § 1333(a)(1), (b)(1), but also specify that retailers generally "shall not be in violation" for displaying manufacturer-provided packaging or advertising—unless, for example, the retailer "alter[s]" packaging or advertising "in a way that is material to the requirements" of the statute or the Rule, *id.* § 1333(a)(4), (c)(4); *see also* 85 Fed. Reg. at 15,708.  The Rule takes effect on October 16, 2021.  *See* May 8, 2020 Order, ECF No. 33, at 2.

Plaintiffs—four cigarette manufacturers from North Carolina (R.J. Reynolds Tobacco Company; Santa Fe Natural Tobacco Company, Inc.; ITG Brands, LLC; and Liggett Group LLC) (collectively, the "manufacturer Plaintiffs"), and five cigarette retailers from Texas (Neocom; Rangila Enterprises Inc.; Rangila LLC; Sahil Ismail, Inc.; and Is Like You Inc.) (collectively, the "retailer Plaintiffs")—filed their complaint on April 3, 2020.  The complaint names four Defendants, all of whom are located in the District of Columbia or its Maryland suburbs: the United States Food and Drug Administration (FDA), the United States Department of Health and Human Services (HHS),

---

[1] More detailed background information—none of which is necessary to resolve this motion to dismiss—is included in Defendants' cross-motion for summary judgment and opposition to Plaintiffs' motions for summary judgment and for a preliminary injunction, which is being filed concurrently with this motion, and which Defendants incorporate here by reference.

Stephen M. Hahn (in his official capacity as the Commissioner of Food and Drugs), and Alex M. Azar II (in his official capacity as the Secretary of Health and Human Services).  Plaintiffs bring First Amendment and statutory claims, and they seek an order that would vacate the Rule in its entirety, along with certain aspects of the Tobacco Control Act's warnings requirements.

Neocom is the only party that resides in the Eastern District of Texas.

## LEGAL STANDARD

**a.**  "[T]he irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "First, the plaintiff must have suffered an 'injury in fact.'"  *Id.*  To suffice under Article III, that injury must be "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical."  *Id.*  For a future injury to satisfy this standard, the injury must be "certainly impending."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143, 1147 (2013).  "Allegations of *possible* future injury are not sufficient."  *Id.* at 1147 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  "Second, there must be a causal connection between the injury and the conduct complained of.'"  *Lujan*, 504 U.S. at 560-61 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 561.  As always, "the party asserting jurisdiction bears the burden of proof."  *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010).

**b.**  Federal Rule of Civil Procedure 12(b)(3) authorizes a district court to "dismiss an action where venue in that court is improper."  *Blacklands R.R. v. Ne. Texas Rural Rail Transp. Dist.*, No. 1:19-cv-250, 2019 WL 3613071, at *2 (E.D. Tex. Aug. 5, 2019) (internal quotation marks omitted).  "Once defendants raise the issue of improper venue, the plaintiffs have the burden to prove that the chosen venue is proper."  *EnviroGLAS Prod., Inc. v. EnviroGLAS Prod., LLC*, 705 F. Supp. 2d 560, 567 (N.D. Tex. 2010).  And where, as here, the case is brought against "an agency of the United States," venue is proper only in a "judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is

involved in the action." 28 U.S.C. § 1391(e)(1).  If venue is lacking, the district court has only two choices: either (1) "dismiss" the case altogether, or (2) "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

ARGUMENT

This case should be dismissed for lack of venue, because Neocom—the only party that resides in (or has any relevant connection to) this district—lacks Article III standing.  In the alternative, the case should be transferred to the U.S. District Court for the District of Columbia.

## I.     PLAINTIFF NEOCOM SHOULD BE DISMISSED FOR LACK OF STANDING.

### A.     Neocom's Allegations of Injury

In the complaint, Neocom makes only rare and fleeting appearances, as Plaintiffs' challenge—like the statutory and regulatory scheme itself—is overwhelmingly focused on the legal obligations of cigarette *manufacturers* in designing their packaging and advertisements.  Nonetheless, Plaintiffs do allege that Neocom "is a Texas corporation headquartered in Tyler, Texas," which "operates three convenience stores in Tyler that sell cigarettes." Compl. ¶ 14.  Plaintiffs further allege that, when the Rule takes effect, "[t]he retailer Plaintiffs *may* incur costs to alter the manner in which cigarette packs and cartons are displayed to their customers." *Id.* ¶ 120 (emphasis added).  Finally, Plaintiffs offer the following complicated hypothetical about future sales of *non-cigarette* items, which they believe suggests that "the retailer Plaintiffs are likely to suffer financial harm" from the Rule:

> The retailer Plaintiffs currently display cigarette packages and advertising in their convenience stores.  After the Rule takes effect, however, those packages and advertising will necessarily contain grotesque images that are designed to frighten, shock, and disgust people who look at them, including smokers and non-smokers.  If the retailer Plaintiffs continue to display cigarette packages and advertising, non-smokers will be more likely to shop in stores that do not display those packages and advertising, and thus do not contain these offensive images.  Customers who continue to shop at their stores will be less likely to purchase certain non-cigarette items, such as food items that are displayed at the counter within view of the graphic cigarette packages and advertising.  If the retailer Plaintiffs stop displaying cigarette packages and advertising, smokers will be more

4

likely to shop in stores that do display those packages and advertising.
Either way, the retailer Plaintiffs are likely to suffer financial harm.

*Id.* ¶ 116.  In short, the retailer Plaintiffs hypothesize that if they *continue* to sell cigarettes, they might lose business from non-smokers, who might seek out other stores that do not sell cigarettes (though they identify no actual customers with such plans, nor do they provide any data or research to support this hypothetical).  Conversely, the theory goes, if they *stop* selling cigarettes, then they will lose business from smokers (but, curiously, they do not mention that they would gain business from the non-smokers that they predict will be fleeing from convenience stores that continue to sell cigarettes).

Absent from the complaint, however, are any allegations *at all* that Neocom, or any of the retailer Plaintiffs, will suffer a particularized First Amendment harm.  By contrast, the complaint contains detailed allegations regarding the *manufacturer* Plaintiffs' alleged First Amendment interests, the messages they wish to convey on their packaging, and so on.  *See, e.g.,* Compl. ¶ 115 ("By severely undermining the manufacturer Plaintiffs' ability to communicate their truthful messages to adult cigarette consumers through packages and advertising, the Rule and the Act's graphic-warnings requirement undermine these Plaintiffs' ability to convince adult consumers currently choosing their competitors' brands to switch.").

Plaintiffs also submitted additional standing-related material with their summary-judgment motion.  In those declarations, the retailer Plaintiffs raise for the first time allegations that suggest they view themselves as suffering a First Amendment injury.  In particular, Neocom's president, Nooralam Erkin, submitted a declaration in which he claims that, although he does "not object to the government advocating against smoking in other ways," he does not want to "be forced to be its 'mouthpiece' to do so."  Erkin Decl., ECF No. 34-8, ¶ 7.  Mr. Erkin also states that "Neocom does not want to display these graphic warnings," which he believes "are designed to frighten, shock, and disgust its customers and employees[.]"  *Id.* ¶ 6.  As for financial injury, Mr. Erkin states that "[a] large proportion of cigarette purchasers also purchase other goods at the same time," and that cigarette sales are "importan[t]" to "the overall profitability of Neocom stores."  *Id.* ¶ 4.  He also rehashes the

same hypothetical (quoted above) that appears in the complaint, about a purported choice between a potential impact on sales of non-cigarette products or loss of business from smokers.  *See id.* ¶¶ 8, 9.[2]

### B.      Neocom Fails to Demonstrate any First Amendment Injury.

At the outset, it is important to contrast Neocom's alleged First Amendment injury with that of the manufacturer Plaintiffs.  Plainly, the Rule compels speech from the manufacturer Plaintiffs, by requiring them to add specific health warnings to their cigarette packages and advertisements that they would allegedly prefer not to include.  For that reason, although the manufacturers' claims fail on the merits, Defendants do not challenge their standing.

Neocom, by contrast, has not alleged any cognizable First Amendment injury.  Although Neocom's president professes a desire not to "be forced to be [the government's] 'mouthpiece,'" Erkin Decl. ¶ 7, the Rule generally does not compel *retailers* to *say* anything, nor to be the "mouthpiece" for any government message—at least, so long as a retailer does not choose to take it upon itself to modify or direct the content of cigarette health warnings.  In fact, to the extent that they address retailers at all, both the Tobacco Control Act and the Rule largely go out of their way to explain that retailers "shall not be in violation" for displaying manufacturer-provided packages or advertisements containing warnings—unless, for example, the retailer "alter[s]" a package or an advertisement "in a way that is material to the requirements" of the statute or the Rule.  15 U.S.C. § 1333(a)(4), (c)(4); *see also* 85 Fed. Reg. at 15,708.  And here, Neocom does not allege that it wishes to proclaim any prohibited message of its own—for example, by modifying manufacturer packages or advertising— so those limited, warning-related obligations that *do* apply directly to retailers (unchallenged here) cannot sustain an Article III injury for Neocom.  *See, e.g., Markle Interests, LLC v. U.S. Fish & Wildlife Serv.*, 827 F.3d 452, 462 (5th Cir. 2016) (holding that plaintiff allegedly facing "[a]n increased regulatory burden" did not "satisf[y] the injury in fact requirement" because that "regulatory burden . . . is purely speculative at this point").

---

[2] Suleman Ismail, President of the other four retailer Plaintiffs—none of which resides in this district—submitted a declaration that is nearly identical to Mr. Erkin's.  *See* Ismail Decl., ECF No. 34-9.

As a result, Neocom's only potential First Amendment interest would necessarily be derivative of the interests of the *manufacturer* Plaintiffs—who, after all, are the ones who must actually print specific warnings on their packaging and advertising.  But that First Amendment interest cannot be vicariously asserted by cigarette *retailers*—that is, not without stretching third-party-standing doctrine well past its breaking point.

Generally, "constitutional rights are personal and may not be asserted vicariously."  *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973).  And as the Fifth Circuit has made clear, "[a]lthough various prudential standing principles have been relaxed in some First Amendment cases, this relaxation does not eliminate the distinct and independent requirement[s] of Article III."  *Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011).  That is especially true where, as here, the so-called "third party" whose rights are directly at issue—cigarette manufacturers—are *already* before the Court, represented by the same counsel, vigorously asserting their *own* rights in the same case.  Under these circumstances, any comparative leniency of third-party standing doctrine in the First Amendment context has no application.  *See Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984) ("Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties *not before the court*.") (emphasis added).

Even setting aside the presence of cigarette manufacturers in the caption, in the Fifth Circuit, the path to third-party standing on a First Amendment claim is a narrow one.  It applies only "on a *provision by provision* basis: the plaintiff must establish injury under a particular provision of a regulation that is validly applied to its conduct, then assert a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court *under that provision*."  *Nat'l Fed'n of the Blind*, 647 F.3d at 210 (citations omitted); *see also SEIU, Local 5 v. City of Houston*, 595 F.3d 588, 598 (5th Cir. 2010) ("[I]f SEIU is limited by one provision of an ordinance and makes a facial challenge due to the overbreadth of a different provision, there is no constitutional standing . . . as to the separate provision.").  This provision-by-provision rule also forecloses Neocom's claim to standing on a theory of a generic First Amendment injury: to the extent Neocom has any First Amendment interest at stake

here that is *distinct* from the manufacturer Plaintiffs, it would necessarily derive from the "separate provision[s]" of the statute and the Rule that *do* apply directly to retailers. *Local 5*, 595 F.3d at 598; *see* 15 U.S.C. § 1333(a)(4), (c)(4) (defining the limited scope of potential retailer liability). But, as discussed above, Neocom does not allege that those provisions are actually preventing it from doing or saying anything—in fact, Plaintiffs do not even challenge those requirements in this case.

Finally, it is worth stepping back to appreciate the implications of Plaintiffs' theory. If Neocom has standing to challenge the content of cigarette warning labels under the First Amendment, then every retailer in the nation would have standing to challenge laws that do not directly regulate them at all, even without a showing of financial harm—for example, every hardware store could sue to challenge the contents of required warnings on lawn mowers. It is no coincidence that the canonical First Amendment commercial-speech cases were brought by the individuals or businesses that would actually be compelled to speak. *See, e.g.*, *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980). First Amendment doctrine addresses what the government may or may not compel regulated parties to say, and the restrictions it may place on their speech. Because the Rule neither compels nor restricts *Neocom's* speech, Neocom cannot rely on any First Amendment injury to establish standing.

## C.       Neocom Fails to Demonstrate any Financial Injury.

Before analyzing Neocom's alleged financial injury, it bears repeating: if any of the retailer Plaintiffs had alleged that, as a general matter, fewer people will buy cigarettes once the warnings go into effect, they might have had a simpler argument for standing. (That conclusion is unaffected by the fact that FDA's interest in issuing the rule was not, in fact, to reduce smoking rates, but instead to promote greater understanding of the negative health consequences of smoking, as explained in greater detail in FDA's summary-judgment motion and in the Rule itself, *see* 85 Fed. Reg. at 15,638, 15,644.) But, presumably because Plaintiffs wish to leave the Court with the impression that FDA's warnings "will achieve nothing in terms of improving public health," Pls.' Br. 3, they decline to make that relatively straightforward allegation.

But that litigation-strategy judgment has consequences.  Now, the retailer Plaintiffs, including Neocom, are left to rely on tortured and speculative hypotheticals to suggest that they will somehow suffer financially as a result of these warnings—even if overall cigarette sales are unaffected, and even though it is the cigarette *manufacturers*, not retailers, who will bear the costs associated with actually changing packages or advertisements.  In fact, the complaint is quite clear that even cigarette advertisements that appear *in retail stores* are to be updated or replaced by *manufacturers*, not retailers. *See, e.g.*, Compl. ¶ 117(f) ("Reynolds and Santa Fe will thus need to modify existing brand advertising that appears on their websites and retail point-of-sale advertising.  Collectively, Reynolds and Santa Fe will need to redesign, print, and replace point-of-sale advertising at approximately 200,000 retailers."); *id.* ¶ 118(e) ("ITG Brands will need to redesign, print, and replace point-of-sale advertising at approximately 102,000 retailers."); *id.* ¶ 119(e) ("Liggett will need to redesign, print, and replace all point-of-sale communications at each of approximately 35,000 retailers.").

As for retailers specifically, Plaintiffs allege that if they "continue to display cigarette packages and advertising, non-smokers will be more likely to shop in stores that do not display those packages and advertising." *Id.* ¶ 116.  In addition, the retailer Plaintiffs allege that "[c]ustomers who continue to shop at their stores will be less likely to purchase certain non-cigarette items, such as food items that are displayed at the counter within view of the graphic cigarette packages and advertising." *Id.* Finally, they allege that, "[i]f the retailer Plaintiffs stop displaying cigarette packages and advertising, smokers will be more likely to shop in stores that do display those packages and advertising." *Id.*

As an initial matter, Plaintiffs' theory of standing for the retailer Plaintiffs is, to put it mildly, in some tension with their arguments on the merits.  On one hand, Plaintiffs claim that the warnings "will achieve nothing in terms of improving public health," Pls.' Br. 3, and that health warnings "cannot scare people into changing their smoking beliefs (or, for that matter, behavior)," *id.* at 34. Yet, on the other hand, Plaintiffs would have the Court believe that even with respect to non-smoker convenience store shoppers, the effect of these warnings will be so strong that even sales of *non-cigarette* items will fall.  The convenience of this position is extraordinary: on Plaintiffs' view, the warnings will have no effect on consumer knowledge about smoking's health risks—let alone actually reduce

smoking rates—but somehow will have significant effects with respect to shopping for *non-cigarette* items in the same building as cigarette packages.  Plaintiffs offer no evidentiary support for this gerrymandered and counterintuitive economic hypothesis, other than the conclusory statements of Mr. Erkin.  *See* Erkin Decl. ¶¶ 8, 9.  But "Article III demands more than such conclusory assertions." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 545 (5th Cir. 2019).  Because it is Plaintiffs' burden to show standing, a theory that is so speculative, implausible, and internally incoherent cannot support an Article III injury—at least where, as here, it is accompanied by no credible supporting evidence. After all, the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case."  *Lujan*, 504 U.S. at 561.  Accordingly, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof."  *Id.*

To the extent Plaintiffs actually intend to rely upon Mr. Erkin's economic predictions, he would need to be qualified as an expert.  They have not even attempted to do so.  Among other things, there is nothing in the record with respect to Mr. Erkin's relevant qualifications or expertise, if any, other than the statement that he has "numerous years of experience in the retail sector," which is plainly insufficient, standing alone, for the Court to rely on his opinions or predictions, *see* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)—even if they made intuitive sense.

Even ignoring the internal contradictions and the lack of supporting evidence for Plaintiffs' position, their theory of standing still breaks down as a matter of logic, if the Court takes their puzzling predictions at face value.  Plaintiffs' theory hinges on speculation that, when the Rule takes effect, some retailers will continue to sell cigarettes—apparently, including Neocom, *see* Erkin Decl. ¶¶ 4, 9— but some will not, and that smoking and non-smoking consumers will then sort themselves between pro-smoking and anti-smoking convenience stores.  But even assuming that such sorting takes place— rather than, say, everyone continuing to shop for non-cigarette items at the "convenience" store that is most "conveniently" located to them—whether this sorting causes a financial harm or benefit is a question of distribution: what will happen to cigarette revenue, as compared to non-cigarette revenue, at each store?  Plaintiffs offer no reason—not even a speculative one—to think that the magnitude of one effect will be larger than the other.  So, even *accepting* Plaintiffs' theory, if Neocom kept selling

cigarettes (as it sounds like they plan to, *see id.*), it is entirely possible that they would gain more in cigarette revenue (as smokers flock to "pro-smoking" retailers) than they lose in non-cigarette revenue (as some non-smokers decide to shop elsewhere, or smokers purchase fewer non-cigarette items). This unaddressed uncertainty independently dooms Neocom's theory.  *See, e.g.*, *Clapper*, 568 U.S. 398, 414 n.5 (to establish standing, "Plaintiffs cannot rely on speculation about the unfettered choices made by independent actors not before the court") (internal quotation marks omitted); *Little v. KPMG LLP*, 575 F.3d 533, 541 (5th Cir. 2009) (rejecting "claim of injury" centered on theory of "lost business" to competitors, because it "depends on several layers of decisions by third parties" and is thus "too speculative to confer Article III standing"); *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 697 (2nd Cir. 1994) (affirming district court's dismissal for lack of standing when plaintiff failed to show that plaintiff will lose customers, "[b]ecause consumer behavior is unpredictable").[3]

Finally, the complaint alleges halfheartedly that "[t]he retailer Plaintiffs *may* incur costs to alter the manner in which cigarette packs and cartons are displayed to their customers."  Compl. ¶ 120 (emphasis added).  Even setting aside the well-settled principle that "standing cannot be conferred by a self-inflicted injury" like this one, *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018), the allegation is insufficient.  An alleged future injury must be "certainly impending" to satisfy Article III; "[a]llegations of *possible* future injury are not sufficient."  *Clapper*, 133 S. Ct. at 1147.  And here, the uncertainty embedded within the allegation was no oversight: the Erkin Declaration strongly suggests that Neocom *does not*, in fact, intend to change its displays, as it describes such steps only in conditional language.  *See* Erkin Decl. ¶ 10 ("Neocom could choose to minimize somewhat the impact of the

---

[3] The shortcomings of Plaintiffs' theory, in fact, go one level deeper than just their failure to resolve this uncertainty.  Because even if Plaintiffs had introduced evidence about which way the distributional consequences will cut—*i.e.*, evidence of which stores will gain and which stores will lose when smokers and non-smokers apparently realign their convenience-store allegiances—that would not describe an injury, it would describe a choice.  Under Plaintiffs' theory, a retailer will only suffer financial harm if it chooses the "wrong" side of the smokers versus non-smokers trade-off.  But because the Rule does not compel retailers to choose one side or the other, any financial injury would be the result of a self-inflicted choice.  *See Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) ("[S]tanding cannot be conferred by a self-inflicted injury.").

graphic warning rule by altering the manner in which cigarette packs and cartons are displayed to customers. To do that, however, we would have to undertake the cost of reorienting the shelving such that what smokers and non-smokers see when coming to the cash-register are the tops of the packs which indicate the brand but do not display the warning.").

*    *    *

For these reasons, Neocom lacks Article III standing, and the Court lacks subject-matter jurisdiction over its claims. Neocom must therefore be immediately dismissed from the litigation. *See* Fed. R. Civ. P. 12(h)(3). The same is likely true for the other retailer Plaintiffs, although the Court need not decide that question, given the straightforward and insurmountable venue defect that is immediately created by Neocom's dismissal. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.") (internal quotation marks omitted).

## II.  UPON NEOCOM'S DISMISSAL, THIS CASE SHOULD BE DISMISSED FOR LACK OF VENUE.

The rest follows as a matter of course. Once Neocom is dismissed, there is no longer any basis for venue in this district: no defendant resides here, *see* 28 U.S.C. § 1391(e)(1)(A), it is not the case that "a substantial part of the events or omissions giving rise to the claim occurred" here, *see id.* § 1391(e)(1)(B), and no (proper) plaintiff resides here, *see id.* § 1391(e)(1)(C). And a plaintiff who lacks Article III standing cannot create venue where it would not otherwise exist. *See Miller v. Albright*, 523 U.S. 420, 426-27 (1998) ("[T]he District Court concluded that Mr. Miller did not have standing and dismissed him as a party. Because venue in Texas was therefore improper, *see* 28 U.S.C. § 1391(e), the court transferred the case to the District Court for the District of Columbia, the site of the Secretary's residence."); *Inst. of Certified Practitioners, Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) ("Having found that the Institute lacks standing to bring this action and has failed to state a claim upon which relief can be granted, plaintiff cannot manufacture venue by adding the Institute as a party."); *see also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3815

12

(4th ed.) ("[V]enue cannot be based on the joinder of a plaintiff" that has been added "for the purpose of creating venue in the district.").

Accordingly, the Court has two options: either it "[1] shall dismiss, or [2] if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  As between those options, the district court has "broad discretion."  *McCormick v. Payne*, No. 3:15-cv-02729-M, 2015 WL 7424772, at *3 (N.D. Tex. Nov. 23, 2015).  But here, "the interest[s] of justice," *id.*, favor dismissal.

Plaintiffs are a group of uncommonly sophisticated and well-represented litigants, who surely selected this venue intentionally, with full awareness of the downside risk: that their only claim to venue would turn on whether Neocom was an appropriate plaintiff.  *See* Compl. ¶ 24 (alleging that "[v]enue is proper in this district under 28 U.S.C. § 1391(e) because it is where one of the Plaintiffs resides").  Plaintiffs had every opportunity to prepare detailed factual allegations, and even attempted to bolster those allegations via a declaration attached to their summary-judgment motion.  There is no reason for this Court to rescue these Plaintiffs from the consequences of their own strategic litigation choices.  *See* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3827 (4th ed.) ("[D]istrict courts often dismiss rather than transfer under Section 1406(a) if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and that similar conduct should be discouraged.").  In addition, dismissal will cause minimal (if any) prejudice: Plaintiffs can likely refile in another district where there is no venue problem.  *See* Fed. R. Civ. P. 41(b).

## III.   IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA.

If the Court concludes that Neocom lacks standing and that venue is therefore improper, the only other option, short of dismissal, is to "transfer" the "case to any district or division in which it

could have been brought." 28 U.S.C. § 1406(a).  Here, the most appropriate alternative venue would be the U.S. District Court for the District of Columbia.[4]

It is appropriate that this case be heard in the District of Columbia, where it unquestionably "could have been brought." 28 U.S.C. § 1406(a).  In fact, many of these same manufacturers (or their corporate predecessors) clearly thought that the District of Columbia was an appropriate and convenient home for litigation like this, given their choice to challenge FDA's previous cigarette health warnings rule in that forum.  *See R.J. Reynolds Tobacco Co. v. FDA*, 696 F.3d 1205, 1210 (D.C. Cir. 2012), *overruled in part by Am. Meat Inst. v. USDA*, 760 F.3d 18 (D.C. Cir. 2014) (en banc); *see also Dearth v. Gonzales*, No. 2:06-cv-1012, 2007 WL 1100426, at *5 (S.D. Ohio Apr. 10, 2007) (when selecting an alternative venue in a case in which "Plaintiffs are challenging the constitutionality of federal legislation," "the District of Columbia would appear to be an obvious choice").  In addition, separate litigation challenging the Rule is already pending in D.C., and the parties there have requested that the case proceed along the same procedural track that the Court adopted here (*i.e.*, simultaneous briefing on cross-motions for summary judgment and a motion for a preliminary injunction).  *See* Joint Motion to Set Schedule, ECF No. 15, *Philip Morris USA Inc. v. FDA*, No. 20-cv-01181-KBJ (D.D.C.).  And most of the parties' attorneys (on both sides) are based in the District of Columbia.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiff Neocom for lack of Article III standing, and then dismiss this case for lack of venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).  In the alternative, the Court should transfer the case to the United States District Court for the District of Columbia.

---

[4] Other theoretically available options would include the District of Maryland (where the FDA is headquartered), or either the Middle District or the Eastern District of North Carolina (where all of the manufacturer Plaintiffs reside).

Dated: July 2, 2020

Of Counsel:

ROBERT P. CHARROW
General Counsel

STACY CLINE AMIN
Chief Counsel
Food and Drug Administration
Deputy General Counsel
United States Department of Health and
Human Services

PERHAM GORJI
Deputy Chief Counsel for Litigation

JULIE B. LOVAS
Senior Counsel
Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Bldg. 31, Room 4520
Silver Spring, MD 20993-0002
(301) 796-8575

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

STEPHEN J. COX
United States Attorney

DAVID M. MORRELL
Deputy Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Branch Director

/s/ Stephen M. Pezzi
MICHAEL H. BAER (New York 5384300)
STEPHEN M. PEZZI (Virginia 84311)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*